UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TIMOTHY R. CARIGON, #254039**

       **Petitioner,**

                             **Civil No: 00-75567**
                             **Honorable  Arthur J. Tarnow**
                             **Magistrate Judge Steven D. Pepe**

**v.**

**MARY BERGHUIS,**

       **Respondent.**

_____

## MEMORANDUM OPINION & ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

## I.  INTRODUCTION

      This matter is before the Court on Petitioner's, Timothy Carigon's, *pro se* request for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  Respondent filed her Answer in Opposition to Petition for Writ of Habeas Corpus; and Petitioner filed his Reply to Respondent's Answer. Petitioner was charged with and convicted of first-degree murder, pursuant to MCL §750.316; MSA §28.548, subsequent to a jury trial in Ionia County Circuit Court.  Petitioner was sentenced to life imprisonment without the possibility of parole.

      Petitioner challenges the legality of his conviction and raises fourteen issues for the Court's review.  However, these issues can be combined into nine separate claims. First, Petitioner asserts prosecutorial misconduct due to the prosecutor's alleged acts of withholding

*Carigon v. Berghuis,* Case No.  00-75567

the autopsy report, failing to list *res gestae* witnesses, use of improper arguments and use of

perjured testimony.  Second, Petitioner maintains that the trial court erred when it denied

Petitioner's *in limine* motion to exclude prior acts evidence.  Third, Petitioner contends that

the trial court erred when it failed to properly instruct the jury.  Fourth, Petitioner argues that

he was denied a fair trial and due process as a result of the 16 year delay in arresting him and

prosecuting this matter.

Fifth, Petitioner states that he was denied the right to a fair and impartial jury.  Sixth,

Petitioner claims that his trial counsel was ineffective because of his failure to adequately

respond to the prosecutor's misconduct, his failure to adequately investigate Petitioner's case

in preparation for trial, his failure to adequately *voir dire* the jury, his failure to call

exculpatory witnesses and his failure to communicate with Petitioner.  Seventh, Petitioner

maintains that his appellate counsel was ineffective.  Eighth, Petitioner contends that the

errors in this case are cumulative and resulted in an unfair trial.  Finally, Petitioner asserts

that he has shown good cause and prejudice in order to overcome the procedural default issue

in this matter.

Respondent's position is four-fold.  First, Respondent asserts that this Court lacks

jurisdiction to hear the case because Petitioner is presently housed at Brooks Correctional

Facility in Muskegon Heights and was convicted in Ionia County, which would properly place

jurisdiction of this matter in the United States District Court for the Western District of

2

*Carigon v. Berghuis,* Case No.  00-75567

Michigan. Second,  Respondent argues that the delay in Petitioner's arrest and prosecution did not infringe upon his due process rights.  Third, Respondent claims that the trial court's decision to not instruct the jury on the lesser offense of manslaughter was not contrary to or an unreasonable application of a decision of the U.S. Supreme Court.  Finally, Respondent contends that the remainder of Petitioner's claims are procedurally defaulted; and there has been an insufficient showing of "cause" or "prejudice" to overcome this procedural hurdle.

Upon review of the pleadings, the Court denies Petitioner's Writ of Habeas Corpus.

## II.  STATEMENT OF FACTS

On June 22, 1980, in the village of Saranac, in Ionia County, Roy Fisher was killed when his fifth-wheel trailer, in which he resided, caught fire.   The prosecution alleged that Petitioner, who was seventeen at the time, was the individual responsible for setting the fire.  However, it was not until sixteen years after Mr. Fisher's death that Petitioner's case was brought to trial (i.e., 1996).  Prior to 1996, the Ionia County prosecutors declined to charge Petitioner with Mr. Fisher's death due to insufficient evidence.  However, Julia Coulier a/k/a Julia Vasquez, who had been interviewed over the years regarding the fire, came forward after being granted immunity in 1996.  Ms. Vasquez's statements to prosecutors implicated  the Petitioner in the death of Mr. Fisher.

At trial, Ms. Vasquez testified that on June 21, 1980, she and the Petitioner were drinking alcoholic beverages with Mr. Fisher, who was 63 years old at the time.  Ms. Vasquez

3

*Carigon v. Berghuis,* Case No.  00-75567

was sixteen years of age and the Petitioner was seventeen years old.  While everyone was drinking, Ms. Vasquez testified that an argument ensued between the Petitioner and Mr. Fisher, when Mr. Fisher made lewd, sexual and inappropriate remarks about Ms. Vasquez. *(Jury Trial Transcript, dated 12/3/96, pg. 253).*   According to Ms. Vasquez the argument subsided, Mr. Fisher announced that he was going to bed, and he told Ms. Vasquez and the Petitioner that they had to leave. *(Id. at 254).*  Ms. Vasquez testified that she and the Petitioner began to leave, but because Petitioner was still angry about the offensive comments made by Mr. Fisher about Ms. Vasquez, they went back to the trailer.  *(Id. at 256).*

According to Ms. Vasquez, the Petitioner decided to retaliate against Mr. Fisher by pouring  gasoline around his  trailer and setting it on fire.  *Id.*  She testified that Petitioner in fact, poured the gasoline around the trailer.  Afterwards, Ms. Vasquez testified that Petitioner told her to get in the car and drive it down to the end of the driveway and wait. *(Id. at 256, 261).* Ms. Vasquez further testified that while she was waiting for the Petitioner, she saw a lighter flicker under the trailer; and the Petitioner admitted to her that he lit the gasoline.  *Id.*   Despite this testimony, Ms. Vasquez testified that she never actually saw the trailer on fire.

After leaving Mr. Fisher's trailer, Ms. Vasquez testified that the Petitioner called 911, in order to report a fire at Mr. Fisher's residence.  *(Id. at 263).* Petitioner did not use his real name when he phoned in the report.  *Id.*  Ms. Vasquez and the Petitioner also rode to Mr.

4

*Carigon v. Berghuis*, Case No. 00-75567

Fisher's trailer and arrived as the fire trucks pulled onto the property.   *(Id. at 265-266)*.

However, Mr. Fisher's trailer was not on fire.  *Id.*  Ms. Vasquez testified that approximately

twenty-five minutes later, she called in a report of a brush fire at the Johnson Pines

(residential community) because she witnessed the Petitioner attempt to start another fire

in that area after they left Mr. Fisher's residence.  *(Id. at 267-268)*.   Again, the fire trucks

arrived and again there was no fire. *Id.*  After the second false alarm Ms. Vasquez and the

Petitioner went to his  parent's home to sleep.  *(Id. at  288-292)*.   However, Ms. Vasquez

testified that the Petitioner left his parent's home while she was sleeping.  *Id.*   The next

morning, Ms. Vasquez testified that she and the Petitioner returned to Mr. Fisher's trailer and

that the trailer was burned to the ground.  *(Id. at 271-272)*.

## III.  <u>PROCEDURAL HISTORY</u>

Petitioner appealed his conviction as a matter of right to the Michigan Court of

Appeals and posed the following issues for the court's review: (1) whether the trial court

erred in denying Petitioner's motion to dismiss  (2) whether the trial court erred in denying

Petitioner's motion to dismiss based on the 16 year delay in bringing an indictment against

the Petitioner; (3) whether the trial court erred in refusing to give a manslaughter jury

instruction; and (4) whether the trial court erred in denying Petitioner's motion for a new

trial on the grounds of juror misconduct.

5

*Carigon v. Berghuis,* Case No. 00-75567

In an unpublished opinion, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence for first degree murder. *People v. Carigon,* 1999 WL 33454024, Mich. Ct. App. No. 204005 (per curiam) (February 23, 1999). In its opinion denying relief, the Michigan Court of Appeals made three findings.

First, it held that the sixteen year delay between the fire and Petitioner's arrest did not violate his right to a speedy trial, nor his due process rights. Accordingly, the trial court did not err in its denial of Petitioner's motion to dismiss. Second, the appellate court held that Petitioner's argument in support of giving a voluntary manslaughter jury instruction was unpersuasive. Petitioner asserted that Mr. Fisher's lewd and offensive comments constituted "adequate provocation" justifying Petitioner's behavior. The Court of Appeals stated that no reasonable juror would have found that Mr. Fisher's comments rose to the level of "adequate provocation." Finally, Petitioner claimed that he was entitled to a new trial due to juror misconduct.[1] The appellate court did not find that the facts presented in support of Petitioner's position would result in the impairment of the jury's ability to make an impartial

---

[1]One of the jurors allegedly coached the son of a defense witness and the juror supposedly had a close friendship with the defense witness' brother. Also, another juror's ex-husband was in an automobile accident with the Petitioner three years prior to trial; and that juror also allegedly had a close friendship with the same previously mentioned defense witness. Neither of these issues were raised at trial by these jurors during the *voir dire* process.

6

*Carigon v. Berghuis,* Case No. 00-75567

decision. Therefore, the Court of Appeals did not find that Petitioner suffered any prejudice as a result of the jurors' alleged misconduct.

Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court and sought review of the following issues: (1) whether the trial court erred in denying Petitioner's motion to dismiss (basis for the motion was a 16 year delay in bringing an indictment against the Petitioner- violation of speedy trial and due process rights); and (2) whether the trial court erred in refusing to give a manslaughter jury instruction. The Michigan Supreme Court denied Petitioner's application, stating that: "[a]pplication for leave to appeal the February 23, 1999 decision of the Court of Appeals is DENIED." *People v. Carigon,* 461 Mich. 939; 606 N.W.2d 654 (Table) Mich. Sup. Ct. No. 114755 (December 28, 1999).

On December 28, 2000, Petitioner filed a Petition for Writ of Habeas Corpus, raising the same claims that were raised in the Michigan Supreme Court. Also on December 28, 2000, Petitioner filed a motion to stay the habeas proceeding pending the outcome of a motion for relief from judgment, which included twenty-one unexhausted claims.[2] These

---

[2](1) trial court erred when it denied defendant's motion for directed verdict; (2) violation of *Brady* when the prosecutor withheld the autopsy report; (3) violation of res gestae witness statute; (4) trial court erred when it allowed into evidence prior bad act testimony; (5) trial court erred when it allowed "threat" testimony into evidence; (6) prosecutorial misconduct (use of perjured testimony); (7) prosecutorial misconduct (vouching for star witness); (8) prosecutorial misconduct (improper argument); (9) prosecutorial misconduct (invocation of sympathy for Mr. Fisher); (10) prosecutorial misconduct (persistence of it); (11) trial court erred when it denied Petitioner's motion for

7

*Carigon v. Berghuis,* Case No. 00-75567

unexhausted issues were also included as an attachment to Petitioner's habeas petition.  On March 30, 2001, the Court dismissed Petitioner's habeas petition without prejudice.

The trial court denied five of the twenty-one issues raised by the Petitioner in his motion for relief from judgment and appointed attorney Judy L. Swartz to assist the Petitioner in amending his brief relative to the other issues.  An Amended Motion for Relief from Judgment was filed on August 27, 2001.  On February 7, 2002, the trial court dismissed the remainder of Petitioner's claims.

Petitioner filed a Delayed Application for Leave to Appeal the trial court's decision regarding the motion for relief from judgment  and raised the following issues: (1) prosecutorial misconduct (failure to provide autopsy report, failure to call res gestae witnesses, use of improper argument, use of perjured testimony; (2) ineffective assistance of trial counsel (failure to object to prosecutorial misconduct, failure to adequately investigate or prepare for trial, failure to adequately voir dire the jury; (3) ineffective assistance of

---

a new trial; (12) ineffective assistance of trial counsel (failed to make certain objections and failed to move for a *Walker* hearing); (13) trial court erred when it failed to give the jury a manslaughter instruction; (14) ineffective assistance of trial counsel (failed to investigate or interview potentially exculpatory witnesses); (15) ineffective assistance of trial counsel (failure to use properly use challenges for cause during the voir dire process; (16) ineffective assistance of trial counsel (failed to be truthful and communicate with the Petitioner and failed to adequately prepare for trial); (17) prejudice resulting from unreasonable delay in arresting the Petitioner; (18) ineffective assistance of appellate counsel; (19) Petitioner's conviction should be set aside because of several serious errors which have resulted in a miscarriage of justice; (20) cumulative error; and (21) the cause and prejudice elements have been met so that Petitioner can proceed with these claims despite the fact that most of these issues were not raised at trial or on direct appeal.

8

*Carigon v. Berghuis,* Case No. 00-75567

appellate counsel; and (4) good cause and prejudice has been shown in this case. The Michigan Court of Appeals denied Petitioner's application, stating that: "[t]he Court orders that the delayed application for leave to appeal is DENIED for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Carigon,* Mich. Ct. App. No. 246478 (August 13, 2003). Petitioner failed to timely file an application for leave to appeal in the Michigan Supreme Court.

Petitioner then filed a motion with this Court to reopen his habeas case on November 26, 2003. The Court granted Petitioner's motion on August 26, 2004. On September 27, 2004, Petitioner filed a brief in support of his original habeas petition, wherein he raises fourteen issues for the Court's review: (1) violation of *Brady* when the prosecutor withheld the autopsy report; (2) violation of res gestae witness statute; (3) trial court erred when it allowed into evidence prior bad act testimony; (4) trial court erred when it allowed "threat" testimony into evidence; (5) prosecutorial misconduct (use of perjured testimony); (6) prosecutorial misconduct (vouching for star witness); (7) prosecutorial misconduct (improper argument); (8) prosecutorial misconduct (invocation of sympathy for Mr. Fisher); (9) trial court erred when it failed to give proper jury instructions; (10) ineffective assistance of trial counsel (failed to investigate or interview potentially exculpatory witnesses, failed to properly use challenges for cause during the voir dire process, failed to be truthful and communicative with the Petitioner and failed to adequately prepare for trial); (11) prejudice

9

*Carigon v. Berghuis,* Case No. 00-75567

resulting from unreasonable delay in arresting the Petitioner; (12) ineffective assistance of

appellate counsel; (13) cumulative error; and (14) the cause and prejudice elements have

been met so that Petitioner can proceed with these claims despite the fact that most of these

issues were not raised at trial or on direct appeal.

Respondent's answer to Petitioner's request for habeas relief is the same as previously

stated.

## IV.  <u>STANDARD OF REVIEW</u>

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings unless
the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court

factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of

10

*Carigon v. Berghuis,* Case No.  00-75567

law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 410-11.

## V.  APPLICABLE LAW & ANALYSIS

### A.  Jurisdiction

Respondent contends that this matter is not properly before the Court because Petitioner is presently being housed in a correctional facility within the Western District of Michigan  (i.e., Brooks Correctional Facility in Muskegon Heights, MI) and his conviction and sentence was obtained in Ionia County.  Therefore, it is Respondent's position that this matter should be transferred to the Western District pursuant to 28 U.S.C. §2241(d) and 28 U.S.C. §1631.

This argument ignores the well-settled rule that jurisdiction is determined at the time a petition is filed.  *Bishop v. Med. Superintendent of the Ionia State Hospital.,* 377 F.2d 467, 468 (6th Cir. 1967).  Under 28 U.S.C. §2241, a petitioner challenging confinement on a state judgment and sentence may file a habeas petition in the district court for the district where

11

*Carigon v. Berghuis,* Case No. 00-75567

he is in custody or in the district court for the district within which the state court rendering

his judgment and sentence is located.  Jurisdiction over the original petition is not destroyed

upon the subsequent transfer of a habeas corpus petitioner.  *Id.*

Petitioner in this case was convicted of first degree murder on December 5, 1996 and

was sentenced on January 27, 1997 in Ionia County.  On January 28, 2002, Petitioner was

transferred to Brooks Correctional Facility in Muskegon Heights, MI.  However, Petitioner

filed his original habeas petition on December 28, 2000.  At that time, he was housed at

Southern Michigan Correctional Facility in Jackson, MI.  Southern Michigan Correctional

Facility is located within the boundaries of the Eastern District of Michigan.  As set forth

above, jurisdiction is dictated by where the Petitioner was incarcerated at the time the habeas

petition was filed if the Petitioner decided to initially file the petition there as opposed to

where he was convicted.  Therefore, his subsequent transfer to a correctional facility in the

Western District of Michigan is of no moment relative to the jurisdictional issues in this case.

Finally, the fact that this matter was filed, dismissed without prejudice and re-opened

after Petitioner's transfer to the Brooks Correctional Facility is also of no consequence.  Case

law provides that if a habeas petition is dismissed without prejudice in order to give the

petitioner the opportunity to exhaust any existing state court claims, "[p]etitioner shall be

allowed to reopen his habeas action 'with the same docket number and with the benefit of

the same filing date.'"  *Dixon v. Burt,* 2001 WL 561207, E.D. Mich. 00-CV-71557-DT,

12

*Carigon v. Berghuis*, Case No.  00-75567
(2001).

For these reasons, the Court finds that jurisdiction is properly before this Court.

## B. __Procedural Default__

The Petitioner has raised fourteen separate claims in support of his position that

habeas relief is warranted in this case.  However, only two of those claims were raised at all

levels of the direct appeal process (i.e., delay in prosecuting this case (due process violation).

and objection to the trial court's failure to give a manslaughter jury instruction).   The Court

finds that Petitioner's remaining twelve claims are procedurally defaulted.

Petitioner failed to file an application for leave to appeal with the Michigan Supreme

Court relative to his motion for relief from judgment.  Petitioner is now barred from seeking

review from the Michigan Supreme Court which imposes a 56 day time limit for filing

applications for leave to appeal pursuant to MCR 7.302(C)(3). Thus, Petitioner's twelve

remaining claims are procedurally defaulted.

When a petitioner has procedurally defaulted in the state courts, that is, failed to

exhaust state remedies, the federal habeas court will only entertain the defaulted issue if the

petitioner can show "cause" for the procedural default and "actual prejudice" as a result of

the alleged federal violation or can show actual innocence.  *Coleman v. Thompson*, 501 U.S.

722, 750 (1991).  Petitioner asserts ineffective assistance of trial and appellate counsel as

*Carigon v. Berghuis,* Case No. 00-75567

cause for his failure to raise his claims on direct appeal. To serve as cause to excuse the default, a claim of ineffective assistance of counsel must be properly exhausted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000); *Coleman v. Mitchell,* 244 F.3d 533, 538 (6th Cir. 2001). Petitioner raised his claim of ineffective assistance of trial and appellate counsel in his motion for relief from judgment for the first time, but failed to raise the issue at all levels of appellate review. Therefore, the claim has not been exhausted and cannot be used as a basis for cause in this case. If the Petitioner cannot show cause for the procedural default, it is unnecessary for the Court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. 527, 533 (1986); *Bell v. Smith,* 114 F.Supp.2d 633, 638 (E.D. Mich. 2000).

However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier,* 477 U.S. at 479-480. However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence of actual innocence that was not presented at trial. *Schulp v. Delo,* 513 U.S. 298, 324 (1995). Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998); *see also, Hillard v. United States,* 157 F.3d 444, 450 (6th Cir. 1998).

14

*Carigon v. Berghuis,* Case No. 00-75567

In this case, there has been no presentation of new reliable evidence by the Petitioner which would place this case in the category of "extraordinary." Therefore, the Court will not consider the remaining twelve constitutional claims presented by the Petitioner in the absence of a showing of cause for procedural default.

### C. Sixteen Year Delay in Bringing Indictment

#### 1. *Violation of Fifth & Fourteenth Amendment Due Process Rights*

The criminal offense took place in 1980. Petitioner was not indicted for the murder of Mr. Fisher until 1996. Petitioner asserts that his due process rights have been violated and his case has been prejudiced because of the 16 year pre-indictment delay in the prosecutor's decision to charge Petitioner for Mr. Fisher's murder. Petitioner contends that he was prejudiced in four ways.

First, Mr. Fisher's burned trailer has been gone from the premises since 1981. Therefore, in 1996, Petitioner's legal team had no access to the trailer for the purpose of: (1) investigating the structure for any alternative theories relative to how the fire was started; (2) finding out any history of these types of trailers being susceptible to fire; (3) discovering how the trailer was constructed; (4) determining what materials were used to construct the trailer; and (5) investigating any history of accidental or intentional fires taking place with the particular make and model of trailer in which Mr. Fisher resided.

*Carigon v. Berghuis,* Case No. 00-75567

Second, the company that manufactured the trailer went out of business in 1983 and no additional information could be found relative to the company after 1987/1988. Petitioner asserts that this fact also shuts the door on any additional information that Petitioner could learn about the trailer.

Third, Petitioner's trial attorney learned some information regarding Mr. Fisher's banking and how large withdrawals were taken from Mr. Fisher's account. Petitioner's theory was that some other person or persons may have had a financial interest in the death Mr. Fisher. However, the bank at which Mr. Fisher had his funds purges their records every seven years. Therefore the records which Petitioner sought to bolster that theory no longer existed. Finally, Petitioner claims that an investigator who was hired by his trial attorney interviewed several witnesses. However, due to the sixteen year lapse of time, many of these witnesses' memories had faded and their statements were not useful.

Respondent argues that the appellate court on direct appeal did not unreasonably apply United States Supreme Court law relative to the issue of prejudice allegedly caused by a violation of Petitioner's due process rights under the Fifth Amendment, and claims that the facts of this case do not rise to the level of a constitutional violation.

The Fifth Amendment imposes due process restraints on the length of a pre-indictment delay. A showing of prejudice to the defendant, without more, is not enough to

*Carigon v. Berghuis,* Case No. 00-75567

prove a due process violation; rather there must also be a consideration of the reasons for the delay. *United States v. Lovasco,* 431 U.S. 783, 791 (1983). Proof of actual prejudice makes a due process claim concrete and ripe for adjudication, but it does not make the claim automatically valid. *See, Id.* The *Lovasco* Court further stated the test to be whether the delay "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' . . . and which define 'community's sense of fair play and decency.'" *Id.* at 791.

A pre-indictment delay which is instigated by the government so as "to gain a tactical advantage over the accused" may violate a defendant's due process rights. *Id.* at 795 (quoting, *United States v. Marion,* 404 U.S. 307, 324 (1971)), whereas a delay resulting from investigative efforts "does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time." *Id.,* 431 U.S. at 796; *see also, United States v. Greene,* 737 F.2d 572, 574 (6th Cir. 1984).

The Michigan Court of Appeals considered *Lovasco* when it affirmed the trial court's decision denying Petitioner's motion to dismiss. The Court of Appeals concluded that the prosecution was sufficiently justified for the delay in charging Petitioner for Mr. Fisher's murder because it was deemed an "investigative delay" as opposed to a delay caused by the prosecutor's attempt to gain a "tactical advantage" over the Petitioner. *People v. Carigon,* 1999 WL 33454024, *2, Mich. Ct. App. No. 204005 (per curiam) (February 23, 1999).

17

*Carigon v. Berghuis,* Case No. 00-75567

The Court has reviewed the motion to dismiss and trial transcripts as well as the pleadings filed with the Court and finds that a reasonable application of *Lovasco* was used by the Michigan Court of Appeals in analyzing this case. Therefore, this Court denies habeas relief relative to this issue for the reasons set forth below.

Regarding the Government's pursuit to resolve this matter expeditiously, the motion to dismiss transcript testimony clearly indicates that investigators, the police and the prosecutor's office were active in attempting to gather sufficient evidence to bring charges against someone for the murder of Mr. Fisher. However, the remains of the trailer, the crime scene, the remains of Mr. Fisher and any witness testimony they were able to put together was insufficient to make a case against any one individual, including Petitioner, for Mr. Fisher's murder. Ms. Vaquez testified about Detective Vanderwal's pursuit of this case as follows: " . . . he pursued a lot. I mean, he was always calling. I knew that he was not going to let this case go. I knew. O.K." *(Motion to Dismiss Transcript, dated 11/22/96, pg. 101).* The prosecutor posed the following question to Ms. Vasquez: "Ma'am, you say Detective Vanderwal wasn't going to let this case go. Basically, is it a fair statement that over the years he would contact you periodically?" *Id.* at 102. Ms. Vasquez replied: "Yes. You see, I was dumb enough back then, I thought that after seven years that it was going bye bye, and that's another reason why I just kind of let -- didn't let the facts be known all those years." *Id.* Finally, when Ms. Vasquez was asked why she decided to testify now (in 1996) regarding Mr.

18

*Carigon v. Berghuis,* Case No.  00-75567

Fisher's death, she replied: "I realized that it [this case] just is never going to go away." *Id.* at  98.

Ms. Vasquez's testimony was the key to the prosecution's case against the Petitioner because she was the only person who was actually there when the circumstances leading up to Mr. Fisher's death occurred.  Ms. Vasquez ultimately testified against the Petitioner in 1996 after she was granted immunity for her testimony.  Defense counsel argued the offer of immunity should have been made sooner.  It was.  The testimony of Ms. Vasquez and her attorney clearly shows: (1) there were discussions of immunity early in the investigation ; and (2) notwithstanding an offer of immunity before 1994 (when she ultimately accepted the offer) she was not testifying against the Petitioner because he had threatened to burn her house down and threatened harm to Ms. Vasquez or her family.  *Id.* at 77-79, 81, 96-97. Therefore, she was and continues to be very fearful of the Petitioner.  Additionally, she "knew they [the police] didn't have anything to go on without [her testimony] and that she "just play[ed] them [the police] along." *Id.* at 99.

The only other questions regarding the delay in prosecuting Petitioner are: (1) why Ms. Vasquez's immunity order was not entered until 1996 when she decided to accept the offer in 1994; and (2) why Petitioner was ultimately arrested nine days before the entry of Ms. Vasquez's immunity order.  The prosecution argued that despite Ms. Vasquez's acceptance of immunity in this case in 1994, she was still "scared to death" of the Petitioner and was still

19

*Carigon v. Berghuis,* Case No. 00-75567

not being fully cooperative. *Id.* at 110. The prosecution further argued that its conversations with her attorney regarding Ms. Vasquez's intent to fully cooperate in this investigation led to the arrest of the Petitioner before the entry of Ms. Vasquez's immunity order. In addition, the Court does not find that the Petitioner incurred any additional prejudice between 1994 and 1996 since the trailer nor the trailer manufacturer were in existence as of 1981 and 1983, respectively[3].

For these reasons, the Court denies habeas relief relative to this issue.

### D.  Manslaughter Jury Instruction

Petitioner contends that the jury should have been instructed on the lesser offense of manslaughter because there was adequate provocation when Mr. Fisher made lewd and offensive comments to Ms. Vasquez and when he allegedly waived a gun around while Ms Vasquez, the Petitioner and Mr. Fisher were inside of the trailer. Petitioner also contends that the manslaughter instruction should not have been precluded based upon a procedural bar such as the statute of limitations, since the facts in this case required a manslaughter jury instruction.

A lesser included offense instruction of voluntary manslaughter should be given if supported by a rational view of the evidence. *People v. Mendoza,* 468 Mich. 527, 541; 664

---

[3]The record reflects that Petitioner had access to blue prints of the trailer at trial.

20

*Carigon v. Berghuis,* Case No. 00-75567

N.W.2d 685 (2003). Voluntary manslaughter is the unlawful killing of a person, without malice, upon a sudden quarrel of heat of passion. *People v. Pouncey,* 437 Mich. 382, 388; 471 N.W.2d 346 (1991). The absence of malice distinguishes manslaughter from murder because the defendant's showing of adequately provoked heat of passion is said to negate the element of malice. *People v. Townes,* 391 Mich. 578, 589-90; 218 N.W.2d 136 (1974). In order to constitute manslaughter, there must be sufficient evidence of provocation to arouse an ordinary and reasonable person to kill the decedent. *People v. Hawthorne*, 265 Mich. App. 47, 57; 692 N.W.2d 879 (2005).

The appellate court in this case held that it was not "convinced that no reasonable juror would have found that the victim's comments constituted "adequate provocation" justifying defendant's behavior. Therefore, the trial court did not err in refusing to give a voluntary manslaughter instruction in this case." *People v. Carigon,* 1999 WL 33454024, *3, Mich. Ct. App. No. 204005 (per curiam) (February 23, 1999).

The Court will not grant habeas relief relative to this issue for two reasons. First, although there is United States Supreme Court law which finds it unconstitutional to prohibit the instruction of lesser included offenses in *capital* cases, that is not a mandate in *non-capital* cases, which is the situation before this Court. *See, Beck v. Alabama,* 447 U.S. 625, 638 (1980); *Keeble v. United States,* 412 U.S. 205, 212-23 (1973). The Sixth Circuit has also held that because *Beck* was a challenge based on the Eighth Amendment, the

21

*Carigon v. Berghuis,* Case No. 00-75567

Constitution does not require a lesser included offense instruction in *non-capital* cases. *Bagby v. Sowders,* 894 F.2d 792, 795-97 (6th Cir. 1990). Therefore, there was no mandate that a lesser included offense instruction be given in this case.

For these reasons, the Court declines to grant habeas relief relative to the trial court's failure to instruct the jury on the lesser included offense of manslaughter.

**VI.  CONCLUSION**

For the foregoing reasons, the Court concludes that all of Petitioner's claims for habeas relief filed pursuant to 28 U.S.C. §2254 either lack merit or are barred by the doctrine of procedural default.  Consequently, Petitioner's application for federal habeas corpus relief shall be dismissed and the writ denied.

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus **[Doc. #1-1, filed December 28, 2000]** is **DENIED** and this matter is **DISMISSED WITH PREJUDICE.**

s/Arthur J. Tarnow

Arthur J. Tarnow

United States District Judge

Dated:  August 8, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 8, 2005, by electronic and/or ordinary mail.

s/Catherine A. Pickles

Case Manager

22